**PATTON BOGGS LLP**
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600

Attorneys for Defendants Tully Construction
Co. Inc. and Tully Industries Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | 21 MC 102 (AKH) (all actions identified in the Table attached to the Notice of Motion) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TULLY CONSTRUCTION CO. INC. AND TULLY INDUSTRIES, INC.'S <u>MOTION TO TRANSFER</u>** |
| THIS DOCUMENT APPLIES TO ALL WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | |

## PRELIMINARY STATEMENT

Defendants Tully Construction Co. Inc. and Tully Industries, Inc.[1] (collectively "Tully")

move before this Court to renew their motion to transfer the actions currently pending against

Tully from the above-captioned consolidated litigation ("21 MC 102") to Consolidated Master

Docket 21 MC 100 ("21 MC 100") or, in the alternative, to Consolidated Master Docket Number

---

[1]      As was previously addressed in the context of the 21 MC 100 litigation, Tully Industries, Inc. is an improperly named defendant in the World Trade Center litigation. Tully Industries, Inc. was included in the December 28, 2007 stipulation of dismissal entered in 21 MC 100 which dismissed various defendants without prejudice from actions brought in that master docket. Tully Industries, Inc. also has been improperly named as a defendant in these 21 MC 102 actions and should be similarly dismissed here.

21 MC 103 ("21 MC 103").  Additionally, Tully moves to transfer plaintiff Kirk Arsenault's

civil action against Tully, docketed 04-cv-5338, from 21 MC 102 to 21 MC 100.[2]

## PROCEDURAL HISTORY

Tully was hired by the City of the New York ("the City") to assist in the rescue, recovery,

and debris removal operations at the World Trade Center ("WTC") Site and related locations

following the catastrophic events of September 11, 2001.  To date, Tully has been named as a

defendant in approximately 7,795 actions in 21 MC 100, 134 actions in 21 MC 103, and 109

actions in 21 MC 102.

On August 9, 2005, this Court entered a Case Management Order ("CMO") creating the

21 MC 102 docket for "[c]ases brought by plaintiffs ... alleging personal injury primarily ...

based on conduct that occurred outside the area defined as the WTC Site in Case Management

Order 3 of the 21 MC 100."  *See* August 9, 2005 CMO, 21 MC 102 at ¶ 3 (emphasis in original).

The plaintiffs in the actions filed in 21 MC 102 naming Tully as a defendant (the "21 MC 102

Tully Actions")[3] make substantially similar allegations as those made by plaintiffs in the actions

brought against Tully in 21 MC 100.  The claims in both dockets relate to Tully's work at the

WTC Site, as it has been defined by the Court, as one of the City's contractors involved in the

rescue, recovery and debris removal operations.  *See, e.g., Byron Acosta v. Bankers Trust*

---

[2]    The action of plaintiff Richard Racioppi, captioned *Richard Raciopi v. Tully Construction Co., Inc., and Deutsche Bank*, Index No. 112407/04 (latest Complaint dated October 13, 2004), is not the subject of this motion as Plaintiffs' counsel has indicated that the *Racioppi* action will be voluntarily dismissed or withdrawn.  If that understanding is incorrect in any way, Defendants respectfully request that the *Racioppi* action also be transferred from the 21 MC 102 docket to the 21 MC 100 docket for the reasons set forth herein.  Although the *Racioppi* action (like the *Arsenault* action) currently is docketed in 21 MC 102, no check-off complaint has been filed in the *Racioppi* action.

[3]    A table identifying these actions is attached to the Notice of Motion submitted herewith.  For the convenience of the Court, a copy of that table also is attached to the Certification of Joseph E. Hopkins, Esq. dated November 7, 2007 ("Hopkins Cert.") as Exhibit A.

*Company*, Index No. 07-cv-1552 at 6, 8, 10 (attached to the Certification of Joseph E. Hopkins, Esq., dated November 7, 2007 ("Hopkins Cert.") as Exhibit B).

On August 2, 2007, Tully moved before this Court to transfer and/or stay all actions that were pending against Tully in 21 MC 102. By Order dated September 21, 2007, this Court granted Tully's motion to stay and, while recognizing that "[a] transfer may be appropriate at some later time," denied Tully's motion to transfer those actions to 21 MC 100 "without prejudice to renewal." *In re World Trade Center Disaster Site Litigation*, 21 MC 100, slip. op. at 16 (S.D.N.Y. Sept. 21, 2007).

On October 5, 2007, the United States Court of Appeals for the Second Circuit vacated the stay of District Court proceedings in 21 MC 100 that it had previously established. *In re World Trade Center Disaster Site Litigation*, ___ F.3d ___, 2007 WL 2908048 (2d Cir. 2007). As a result, Tully now renews its motion to transfer the actions currently pending against it in 21 MC 102 to 21 MC 100 or, in the alternative, to 21 MC 103.[4]

## ARGUMENT

I.    **THE ACTIONS CURRENTLY PENDING AGAINST TULLY IN THE 21 MC 102 DOCKET SHOULD BE TRANSFERRED TO THE 21 MC 100 DOCKET OR, IN THE ALTERNATIVE, TO THE 21 MC 103 DOCKET.**

It is well established that the Court has the authority to transfer actions pending before it from one docket to another.[5] Transferring the matters pending against Tully in 21 MC 102 to

---

[4]    In light of Tully's motion, Tully believes that it would not be appropriate to respond to Plaintiffs' First Demands for Production of Documents and First Set of Generic Interrogatories, the 21 MC 102 Master Complaint, and Check-Off Complaints.

[5]    *See Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2003) ("A court has the inherent power to supervise and control its own proceedings."); *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 518 (S.D.N.Y. 2006) (recognizing "the court's inherent power to manage its docket in the interests of justice, convenience of the parties, and judicial economy").

either 21 MC 100 or 21 MC 103 will both ensure that Tully's substantive rights are not violated and promote the interests of judicial economy and efficiency.

The claims brought against Tully in 21 MC 102 fall well outside the prerequisites established by this Court in defining the 21 MC 102 docket. The Court created the 21 MC 102 docket to consolidate complaints based upon conduct outside of the WTC Site. The Case Management Order establishing 21 MC 102 expressly declared that it was intended to encompass "[c]ases brought by plaintiffs – such as clean-up personnel – alleging personal injury . . . based on conduct that occurred <u>outside</u> the area defined as the World Trade Center Site in Case Management Order 3 of the 21 MC 100 case . . . ." Case Management Order, 21 MC 100 at ¶ 3 (Aug. 9, 2005). Case Management Order No. 3, entered in 21 MC 100 ("CMO3"), defines the WTC Site and specifically includes "the Deutsche Bank Building at Liberty and Greenwich Streets." CMO3, 21 MC 100 at 1 (Feb. 10, 2005).

Importantly, as to Tully, all of the Tully Actions arise solely from Tully's work at the Deutsche Bank building as a City contractor involved in the rescue, recovery and debris removal operations. This is exactly the nature of the work for which Tully has been sued in 21 MC 100. Because the Deutsche Bank building is considered part of the WTC Site and because Tully's work at that building was limited to work in furtherance of the rescue, recovery, and debris removal operation, the actions pending against Tully in 21 MC 102 should be transferred from 21 MC 102 to 21 MC 100 (or at least to 21 MC 103).

The Court has indicated that there are two integral factors that play a role in determining the appropriate docket in which to file a WTC-related claim: (1) the identity of the defendant; and (2) the alleged location of the plaintiff's work. Regarding the first factor, the Court previously stated that the 21 MC 100 docket consists of "cases that were focused mainly against

4

the City." June 15, 2007, 21 MC 102 Status Conference Transcript at 15:21-24.  On the other

hand, the 21 MC 102 docket, on the other hand, consists of cases brought against "private or

public homeowners independent of the Department of Design and Construction." *Id.*  Explaining

the need for different dockets, this Court noted:

> What's the justification of having a different collection of cases in
> 102 from what I have in 100?  I'll answer it.  It's because it's a
> different Defendant.  The City, except as an owner of property, is
> not involved.  The violations alleged of the labor law were by the
> managers and owners of the specific properties.

*Id.* at 19:18-25.  Here, Tully was not a "manager" or "owner" (or lessor or lessee) of the

Deutsche Bank building.  Rather, Tully was one of the City's contractors performing debris

removal and related work at the WTC Site (including the Deutsche Bank building) in connection

with the rescue, recovery, and debris removal operation.  Therefore, the claims currently pending

against Tully in 21 MC 102 properly belong in 21 MC 100 and should be transferred.

Regarding the second factor, the area where a plaintiff allegedly worked, this Court

previously refused to transfer plaintiff Steve Zablocki's complaint from 21 MC 100 to 21 MC

102, recognizing that "the Deutsche Bank building at 130 Liberty Street . . . is considered part of

the World Trade Center Site, as defined in [CMO3]." *Zablocki v. Tully Construction Co.*, No.

06-cv-15494 (S.D.N.Y. Apr. 13, 2007).  Here, those identical considerations are present because

Tully's work was at the Deutsche Bank building: the same location as in the *Zablocki* matter.

Therefore, the undisputed facts merit the transfer of the Tully Actions to 21 MC 100.

In the alternative, if the Court does not feel that transfer of these matters to 21 MC 100 is

appropriate, the Court created the 21 MC 103 docket to encompass the claims of "straddler"

plaintiffs who performed work at the WTC Site as defined in CMO3 and at other locations.  *See,*

Case Management Order No. 1, 21 MC 103 at 1-2 (Mar. 28, 2007).  As a result, if the Court

chooses not to transfer these actions to 21 MC 100, to avoid having Tully (whose work at the Deutsche Bank building was precisely the same kind of work with which it was involved "on the pile") incorrectly grouped into the proceedings in the 21 MC 102 docket, the 21 MC 103 docket would be a more appropriate place for the Tully Actions. Like the "straddler" actions in 21 MC 103, the plaintiffs who are bringing claims against Tully in 21 MC 102 allege injuries purportedly resulting from their work at the WTC Site (*i.e.*, the Deutsche Bank building) and at various locations outside of the area described in the definition of the WTC Site. *See, e.g., Agudelo v. 100 Church Street, LLC*, No. 07-cv-4446 (AKH) (1 Federal Plaza, 100 Church Street, 70 Pine Street, 75 Park Place, Deutsche Bank Building, High School of Economics and Finance, Verizon Building) (attached as Exhibit C to the Hopkins Cert.). In sum, whether transferred to 21 MC 100 because the plaintiffs' claims against Tully allegedly arise from their work at the Deutsche Bank building or transferred to 21 MC 103 because many of the Tully Plaintiffs are essentially "straddler" plaintiffs, all of the actions currently pending against Tully in 21 MC 102 should be transferred to a more appropriate docket.

## II.    THE *ARSENAULT* ACTION, 04-cv-5338, SHOULD BE TRANSFERRED TO 21 MC 100.

Three plaintiffs, Kirk Arsenault and Steve Zablocki,[6] have brought suit against Tully for alleged injuries stemming from their work for a defendant subcontractor of Tully's, Manafort Brothers, Inc., at the Deutsche Bank building. On or about December 26, 2006, Mr. Zablocki filed a second complaint, Civil Action No. 06-cv-15494, in Master docket 21 MC 100. Thereafter, Mr. Zablocki's counsel requested the transfer of this action from the 21 MC 100

---

[6]    Contrary to the Court's Orders, counsel for Arsenault and Zablocki, Robin Wertheimer, Esq., originally filed a joint complaint, docketed at 04-cv-5338 in 21 MC 102. Zablocki apparently filed the second complaint, 06-cv-15494, in 21 MC 100 to correct for this error. To date, counsel for Arsenault and Zablocki has not filed any amended pleading withdrawing Zablocki from the joint complaint 04-cv-5338.

docket to the 21 MC 102 docket. As described above, the Court denied plaintiff's request for transfer, reasoning that "Mr. Zablocki's complaint alleges that he worked at the Deutsche Bank building at 130 Liberty Street from October 15, 2001 to December 15, 2001. This location is considered part of the World Trade Center Site, as defined in Case Management Order No. 3, 21 MC 100 (Feb. 7, 2005)." *See* Zablocki Order.

As with the *Zablocki* action, the *Arsenault* action belongs in the 21 MC 100 docket and should be transferred. Plaintiff Arsenault's allegations are identical to those of plaintiff Zablocki. They both allege to have worked in the Deutsche Bank building for Manafort Brothers, Inc., a subcontractor to Tully, performing certain work allegedly related to "construction, demolition, repair, alteration and/or rehabilitation" at that location. *Compare Arsenault v. Tully Constr. Co.*, Civil Action No. 04-cv-5338, at ¶¶ 5, 10, 11 *with Zablocki v. Tully Constr. Co.*, Civil Action No. 06-cv-15494, at ¶¶ 5, 10, 11.

Given the identical nature of the allegations contained in *Zablocki* and *Arsenault*, and for the reasons already articulated by the Court in the *Zablocki* Order, Tully respectfully requests that the *Arsenault* action be transferred from the 21 MC 102 docket to the 21 MC 100 docket.

## <u>CONCLUSION</u>

For the foregoing reasons, Tully respectfully requests that the Court transfer the actions currently pending against it in the 21 MC 102 docket to the 21 MC 100 docket or, in the alternative, to the 21 MC 103 docket. In addition, Tully requests that the *Arsenault* action be transferred from the 21 MC 102 docket to the 21 MC 100 docket.

Respectfully submitted,


_____s/_____
James E. Tyrrell, Jr., Esq.
PATTON BOGGS LLP
Counsel for Tully Construction Co., Inc.
Tully Industries, Inc.


Dated: November 9, 2007

8